Filed 9/2/14  Marriage of Hartnett CA3

<u>**NOT TO BE PUBLISHED**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Placer)

----

| | |
|---|---|
| In re the Marriage of JONATHAN W. and STACEY V. HARTNETT. | C072815 |
| JONATHAN W. HARTNETT, | (Super. Ct. No. T-DR-0000159) |
| Respondent, | |
| v. | |
| STACEY V. HARTNETT, | |
| Appellant. | |

We write here another chapter in this family law saga.  Stacey V. Hartnett (mother) raises two basic contentions in this appeal, both of which stem from an interplay between a juvenile court determination and certain family court orders.  In a prior appeal, we overturned the juvenile court determination.  (*In re A.H.* (Aug. 8, 2012, C066971) [nonpub. opn.].)

1

Specifically, mother contends that our invalidation of the juvenile court proceeding (1) invalidates the requirement that her in-person visitation with her daughter be supervised, and (2) constitutes a substantial change of circumstances for custody modification. We disagree and shall affirm the two postjudgment family court orders at issue. Given that mother's contentions on appeal present essentially legal issues, we will discuss those contentions straightaway, weaving the pertinent facts into those discussions.

## DISCUSSION

### I. Supervised Visitation

For several years, mother and Jonathan W. Hartnett (father) were engaged in a highly contentious divorce, a remnant of which is an ongoing custody and visitation dispute involving their lone child (hereafter daughter), who was born in July 2002.

Based on a child custody evaluation in 2007 that expressed concerns about mother's emotional stability and noted father's more reasonable and stable presentation, the family court in 2008 granted mother and father joint legal custody of daughter, but awarded father primary physical custody.

Based on another child custody evaluation in 2010 from a new evaluator, the family court, in a June 3, 2010 order, awarded father full legal and physical custody of daughter "until such time as the parties are able to work more cooperatively with each other," and allowed mother unsupervised visitation. (This order is sometimes referred to as the July 21, 2010 order, which actually is the date of filing the order from a June 3, 2010 hearing.)

After considering a social worker's reports, the juvenile court, in August 2010, found prima facie evidence that daughter was a child described by Welfare and Institutions Code section 300, subdivision (c) (hereafter section 300(c))—i.e., at substantial risk of serious emotional damage from mother, if the juvenile court did not

2

assume jurisdiction. Accordingly, the juvenile court, in August 2010, placed daughter in father's home while allowing mother limited supervised visitation. In November 2010, the juvenile court sustained the section 300(c) petition and declared daughter a dependent of the court; as a result, the juvenile court, among other things, removed daughter from mother's care and custody, placed daughter with father, and changed mother's supervised visitation to a therapeutic setting.

On August 24, 2011, the family court held an all-day contested hearing on father's request for a move-away order, to move, with daughter, to Plattsburgh, New York. At this hearing, mother, represented by counsel, presented abundant evidence and cross-examined father's witnesses. The family court granted the move-away order, noting explicitly that the goal, concerning mother's visitation, was that therapeutic supervised visitation would "transform [eventually] into nontherapeutic and eventually to unsupervised visits."

A year later, in August 2012, we reversed the juvenile court's November 2010 jurisdictional order, and vacated the juvenile court's dispositional judgment and all subsequent orders predicated on the November 2010 jurisdictional order. We concluded "[there] was no evidence that [daughter] was at risk of serious emotional damage if the juvenile court did not assume jurisdiction"; and we noted the family court could "enter orders addressing custody, visitation, and counseling for parents and [daughter]. 'This is part and parcel of the family law court's role.' [Citation.] ' . . . "The juvenile courts must not become a battleground by which family law war is waged by other means." ' "

That brings us to the present proceedings.

On the heels of our juvenile court reversal, mother moved in family court to modify child custody and supervised visitation, among other things. A four-day trial ensued (with a statement of decision on Sept. 26, 2012), followed by another exhaustive proceeding involving mother's motion for a new trial and request for in-person visitation

3

in California (with an order dated Nov. 26, 2012). Mother was almost entirely unsuccessful, except the family court did permit supervised visitation to now take place also in California (in addition to New York) on certain stated conditions.

Mother appeals here from the September 26 and November 26, 2012 family court orders. (Code Civ. Proc., § 904.1, subd. (a)(2).)

Mother argues the family court here abused its discretion by not deleting the supervised visitation requirement.[1] Mother specifically asserts that supervised visitation was not included in the family court's last valid custody order before the juvenile court ordered supervised visitation (i.e., the family court's June 3, 2010 order), so supervised visitation is only a vestige of the juvenile court proceedings that we invalidated. In a nutshell, mother claims the downfall of the juvenile court's determinations means the downfall of supervised visitation.

We review visitation orders under the deferential standard of abuse of discretion. (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255 (*Montenegro*).) We see no abuse of discretion here.

The problem with mother's argument is that the *family court*, in its August 24, 2011 move-away order, after affording mother full due process, *itself ordered* that mother's in-person visitation with daughter remain supervised. The family court's August 24, 2011 move-away order came after the juvenile court's orders of supervised visitation.

As the family court in the present proceedings on appeal here clarified, in denying mother's motion for a new trial (concerning mother's current largely unsuccessful request to modify custody and visitation), "[T]he [August 24, 2011] move-away order was

---

[1] Mother may have unsupervised visitation via telephone or Skype.

decided on the basis of the existing family court custody order of June 3, 2010, and the abundant evidence the parties presented at the August 24, 2011 short cause trial. The [family court] visitation orders were made independently of, and without reference to, the juvenile proceedings. Although this court noted [(i.e., the current family court in its Sept. 26, 2012 statement of decision, at p. 5)] that the [August 24, 2011] move-away order 'followed in some respects' the juvenile court order regarding 'supervised or therapeutic visitation,' the court's observation on that point does not mean that this court believed the family court blindly copied the juvenile court's visitation orders at the August 24, 2011 trial. The context of this court's statement [of decision] plainly demonstrates that the visitation orders made by the two courts [(i.e., the family court in its Aug. 24, 2011 move-away order, and the juvenile court)] were merely similar in some respects." "The [August 24, 2011] move-away order was plainly not 'predicated' on the juvenile court's custody order."[2]

The only evidence mother can point to countering this characterization of supervised visitation orders from the family court and from the juvenile court is to note that the family court, in its June 3, 2010 and August 24, 2011 orders, did not attach Judicial Council Form FL-341(A), which is to be attached to orders of supervised visitation to explain the basis for supervision. But this evidence of a missing form pales against that of the family court's August 24, 2011 move-away order itself, which is in the

---

[2] The current family court added that it "did not make any 'finding of supervised visitation' . . . . It merely left intact the August 24, 2011 family court visitation orders [(i.e., the move-away order)] as modified by subsequent family court orders."

record before us; this August 24 order notes supervised visitation and states the basis for ordering supervision.[3]

We conclude the family court did not abuse its discretion by continuing to require that mother's in-person visitation be supervised.

## II. Custody Modification

Mother also contends the family court abused its discretion by not modifying custody after we invalidated the juvenile court custody order, because this invalidation was a substantial change in circumstances that allowed the family court to consider whether custody modification was in daughter's best interest. We disagree.

We review custody orders under the deferential standard of abuse of discretion. (*Montenegro*, *supra*, 26 Cal.4th at p. 255.) We see no abuse of discretion here.

The fact that we invalidated the juvenile court's jurisdictional order and dispositional judgment because there was no evidence, as section 300(c) requires, that

---

[3] At oral argument, mother's counsel emphasized the point that the family court, at the August 24, 2011 move-away hearing, did not find or indicate the basis for a finding, independently from the juvenile court, that mother's visitation with daughter needed to be supervised. That point is belied by: (1) the August 24, 2011 family court's specific statements on the record concerning supervised visitation (e.g., "the goal" is for "supervised visits [to] transform into nontherapeutic and eventually to unsupervised visits"; "[b]oth parties shall set up Skype from their homes for the minor to communicate with therapist and mother for visits [and] work with the therapist, so the minor can go on Skype and speak to mother more often without the therapist supervising the visits"); (2) the August 24, 2011 family court's finding that "there have been long-standing issues with [mother's] anger and animosity, impulse control, both in and outside the company of [her] daughter, which clearly have been detrimental to [daughter's] best interests" (this finding was made in the move-away custody context, but it is reasonable to infer the family court used this finding to support its order of supervised visitation as well, given the language of the finding and the fact that the family court uttered it immediately after discussing supervised visitation); and (3) the current family court's observation, quoted above, that the August 24, 2011 family court's order was "plainly not 'predicated' on the juvenile court's . . . order."

6

daughter was "at risk of serious emotional damage" from mother, does not automatically or inherently translate into a substantial change of circumstances on which to modify custody in mother's favor. A section 300(c) risk of serious emotional damage is defined legally as "a *substantial* risk of *severe* emotional harm." (*In re Brison C.* (2000) 81 Cal.App.4th 1373, 1379, italics added.) A family court modifying child custody between two parents is one thing; a juvenile court assuming dependency jurisdiction for a child's welfare is quite another; it is a more serious judicial intervention requiring a more serious showing.

In a related matter on this issue of modifying custody, mother claims the family court abused its discretion by limiting itself to deciding whether mother or father should have sole physical and legal custody, rather than realizing it had a broad range of options in the custodial and visitation contexts to preserve frequent and ongoing contact between mother and daughter. The present issues of child custody and visitation consumed *four days of trial* in the proceedings on appeal here, *and also* were the subject of an exhaustive motion for new trial proceeding. Suffice it to say, all matters on these issues were covered. The family court did realize the broad range of options before it, as evidenced by its decision to expand the site of in-person supervised visitation from just New York to New York *and* California, while continuing unsupervised visitation via telephone or Skype. And the family court explained, in 19 written pages, under both the legal standard of changed circumstances and the legal standard of the best interests of the child, its reasons for denying mother's motion to change custody and visitation (with the exception of the California in-person supervised visitation just noted). In short, the family court knew what it was doing, and exhaustively did it, in deciding mother's motion to modify custody and visitation.

## DISPOSITION

The postjudgment orders of September 26, 2012 (custody, visitation, etc.) and November 26, 2012 (denying new trial/granting California in-person supervised visitation, etc.) are affirmed.  Father is awarded his costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)

                                                           BUTZ          , J.


We concur:


      NICHOLSON      , Acting P. J.


      MURRAY        , J.